**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| ALVERTA UNDERWOOD, on behalf of CPP, | Case No. 1:11-cv-315 |
| Plaintiff, | Spiegel, J. <br> Bowman, M.J. |
| v. | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Alverta Underwood filed this Social Security appeal in order to challenge the Defendant's finding that her minor daughter, CPP is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review. As explained below, I conclude that the finding of non-disability should be REVERSED, and REMANDED for a reinstatement of benefits because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed a claim for Supplemental Security Income on behalf of CPP on June 30, 1998 and was awarded benefits on August 19, 1998. (Tr. 29). CPP was found to meet Listing 103.03B (asthma) beginning on June 1, 1998. (Tr. 29). A continuing disability review was conducted in May 2002; at this time, CPP was found to have met Listing 112.02, based on a diagnosis of Borderline Intellectual Functioning, Disruptive Behavior, and Developmental Expressive Disorder, and was found to be disabled. (Tr. 30, 326). On

January 25, 2006, another continuing disability determination was performed and CPP was found not disabled beginning February 1, 2006. (Tr. 32, 53-64). This finding was affirmed on reconsideration. Plaintiff's then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On July 15, 2009, an evidentiary hearing was held, at which CPP, Plaintiff and Dr. DiTragalia, a pediatrician, appeared and testified. On September 22, 2009, ALJ James Sherry denied Plaintiff's SSI application in a written decision. (Tr. 7-23).

In his decision, the ALJ found that CPP has the following "severe" impairments: borderline intellectual functioning, disruptive behavior, developmental expressive disorder, and asthma. Despite these impairments, the ALJ found that there had been a decrease in the medical severity of her impairments, such that she no longer met Listing 112.02. (Tr. 18, 20). The ALJ further found that CPP had a "marked" limitation in acquiring and using information; "less than marked" limitations in attending and completing tasks, in interacting and relating with others, in caring for herself, and in health and physical well-being; and no limitation in moving about and manipulating objects. (Tr. 23-27). The ALJ thus affirmed the decision that CPP"s disability ended as of February 1, 2006. (Tr. 28). The Appeals Council denied Plaintiff's request to review the ALJ's decision. (Tr. 6-9).

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income by a person under the age of 18, the Social Security Agency is guided by a three-step sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments. *See* 20 C.F.R. §416.924.

In order to meet a Listing, the child's impairment(s) must be substantiated by medical findings shown or described in the listing for that particular impairment. 20 C.F.R. § 416.925(d). (emphasis added). In order to medically equal a Listing, a child's impairment(s) must be substantiated by medical findings at least equal in severity and duration to those shown or described in the listing for that particular impairment. 20 C.F.R.

§ 416.926(a) (emphasis added).

In order to *functionally equal* a Listing, the child's impairment(s) must be of listing-level severity; i.e., it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a) (emphasis added). The SSA assesses all relevant factors, including (1) how well the child initiates and sustains activities, how much extra help he or she needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) how the child is affected by his or medications or other treatment. 20 C.F.R. § 416.926a(a)(1)(3). Further, in determining functional equivalence, the SSA considers how a child functions in his or her activities within six domains:

> (i) Acquiring and using information;
>
> (ii) Attending and completing tasks;
>
> (iii) Interacting and relating with others;
>
> (iv) Moving about and manipulating objects;
>
> (v) Caring for yourself; and,
>
> (vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi).

The Agency defines "marked" and "extreme" limitations as follows:

(2) Marked limitation.

> (i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we

>would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean

>(3) Extreme limitation.

>>(i) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. §§ 416.926a(e)(2)(i), (e)(3)(i).

Moreover, the SSA must periodically review whether a disabled child continues to remain eligible for benefits. 42 U.S.C. § 1382c(a)(3)(H)(ii)(I); 20 C.F.R. § 416.994a. The SSA follows a three-step process in reviewing continued eligibility for Social Security Benefits. In step one, the SSA determines whether there has been any "medical improvement" in the impairments that the child had at the most recent favorable determination that he or she was disabled (*i.e.*, the comparison point decision or "CPD"). 20 C.F.R. § 416.994a(b). Medical improvement is "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable decision that [the claimant] was disabled or continued to be disabled ... based on changes (improvement) in the symptoms, signs, or laboratory findings associated with [the claimant's] impairment(s)." 20 C.F.R. § 416.994a(c). If no medical improvement has occurred, the child continues to be disabled unless an enumerated exception applies. 20 C.F.R. § 416.994a(b)(1). If medical improvement has occurred, the SSA proceeds to step

5

two. 20 C.F.R. § 416.994a(b)(2).

At step two, if the CPD was made on or after January 2, 2001 and was based upon functional equivalence to a Listing, as is the case here, the SSA need only determine whether the impairment(s) now functionally equals the Listings. 20 C.F.R. § 916.994a(b)(2); Social Security Ruling ("SSR") 05–03p, 2005 WL 1041037. If the impairment still functionally equals a Listing, then disability benefits will continue. *Id.* If the impairment does not, the SSA will proceed to step three. *Id.*

At step three, the SSA must determine whether the child is currently disabled in accordance with the rules for determining disability for children. 20 C.F.R. § 416.994a(b)(3). In determining whether a child is currently disabled, the SSA will consider all of the impairments that the child now has, including those not had at the time of the CPD, or those that the SSA did not consider at that time. *Id.*

**B. Substantial Evidence Analysis**

On appeal to this Court, Plaintiff argues that the ALJ erred by: (1) finding that there has been a medical improvement in CPP's condition since the continuing disability point in May 2002; (2) failing to find that CPP's impairments did not continue to meet or equal Listing 112.02; and (3) failing to find that CPP's impairments do not functionally equal a Listing of Impairments. Upon careful, review the undersigned finds that the ALJ erred in finding that CPP's impairments did not continue to meet Listing 112.02.

*1. Medical Improvement*

In May 2002, CPP was deemed to have the following medical impairments: borderline intellectual functioning, disruptive behavior, and developmental expressive disorder (Tr. 326). These impairments were found to satisfy the requirements of Listing

6

112.02 and, accordingly, CPP was found to be disabled. (Tr. 326). *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1. At step one of the continuing disability review process the ALJ determined that, as of February 1, 2006, CPP's condition had medically improved since the most recent medical determination that she was disabled (*i.e.* the comparison point decision or "CPD") (Tr. 18). 20 C.F.R. § 416.994a(b)-(c)). In making this determination, the ALJ noted that in 2002, CPP was four years old and was "basically nonverbal, with IQ showing a verbal IQ score of 62 and a Full Scale IQ score of 69. (Tr. 18, 320-323). However, by September 2005, an Individualized Education Plan (IEP) review from Plaintiff's teacher indicated that she was continuing to make steady progress on her speech and language goals and objectives. (Tr. 18).

The ALJ also cited to the findings of Dr. Fritsch who examined Plaintiff in December 2005 at the request of the state agency. Dr. Fritsch found that CPP was quiet, minimally responsive, and her language skills remained poor. (Tr. 19, 407). Yet, Dr. Fritsch did not note any significant behavioral or emotional problems. (Tr. 19, 408). Moreover, CPP's Full Scale IQ was now 84, which was a 15-point improvement from her Full Scale IQ score in 2002. (Tr. 19, 321, 409). Dr. Fritsch diagnosed CPP with a learning disorder and a language disorder and no longer found that she had borderline intellectual functioning or disruptive behavior. (Tr. 19, 323-26, 408).

Plaintiff argues, however, that the time of the hearing, CPP was 11 years old and had just completed the 5th grade, but she was reading at a 3rd grade level, which is two grade levels below her peers. Notably, in 2002, CPP was only one grade level behind her peers in reading comprehension. (Tr. 335-343, 444). Thus, Plaintiff argues that, CPP has shown a worsening in her condition. Plaintiff further asserts that  CPP still requires

7

non-mainstreamed special education for all her academic classes, she still requires speech and language therapy on a regular basis, and she is socially and emotionally immature as well. (Tr. 409, 444-445). Notwithstanding this evidence, the undersigned finds that the ALJ's finding of medical improvement is substantially supported.

As detailed above, the record establishes that Plaintiff's condition has medically improved since May 2002, when she was found to be disabled based on a combination of borderline intellectual functioning, disruptive behavior, and developmental expressive disorder. (Tr. 326). Plaintiff's behavioral problems have improved greatly and her intellectual functioning also improved, as evidenced by her IQ score and academic progress. Accordingly, the undersigned finds that the ALJ's decision in this regard is substantially supported.

*2. Plaintiff continues to meet Listing 112.02*

Plaintiff's next assignment of error asserts that the ALJ erred in finding that CPP's impairments did not continue to meet or equal Listing 112.02. Listing 112.02 requires both an A and B criteria to be satisfied before the requirements of the listing can be satisfied. 20 C.F.R. Pt. 404, Subpt. P, App. 1., Listing 112.02. Part A of listing 112.02, requires a claimant to demonstrate medically documented persistence of at least one of ten symptoms. Part B of Listing 112.02 requires that children between ages 3 and 18 have at least two of the following: (a) marked impairment in age-appropriate cognitive/communicative functioning; (b) marked impairment in age-appropriate social functioning; or (c) marked impairment in age-appropriate personal functioning.

In May 2002, the state agency medial consultant found that CPP satisfied part B of Listing 112.02 by meeting requirements (a) and (c). (Tr. 326). In this case, the ALJ

determined that CPP no longer satisfied the B criteria of Listing 112.02 because the evidence no longer documented that CPP had a "marked impairment in age-appropriate personal functioning." See 20 C.F.R. Pt. 404, Subpt. P, App. 1., Listing 112.02(B)(2)(c). Upon carful review, the undersigned finds that the ALJ erred in finding that CPP had less than marked limitation in personal functioning.

Here, Dr. Fritsch indicated that CPP tends to be generally passive, which limits her daily living skills. (Tr. 408). Dr. Fritsch reported that CPP sometimes has daytime bathroom accidents (urination and defecation) and often needs to be reminded and/or redirected. CPP's most recent IEP completed in September 2006, indicated that CPP "exhibits significant adaptive behavior deficits in the areas of communication, daily living skills, and socialization." (Tr. 463). Moreover, Plaintiff testified that CPP still needs direction on how to take baths and assistance brushing her hair. (Tr. 529). There is no indication from the ALJ's decision that he considered such evidence in determining that Plaintiff no longer had marked limitations in social functioning.

Furthermore, even assuming the ALJ correctly found that CPP had less than marked limitation in personal functioning, the record indicates that she had marked limitation in interacting and relating with others (social functioning). As noted above, claimant needs only two "marked" limitations out of three in order to meet the "B" criteria of Listing 112.02. Notably, the ALJ found CPP continues to have at least a "marked" limitation in cognitive/communicative functioning. Plaintiff now asserts that CPP has a "marked" limitation in social functioning, due primarily to the severity of her language disorder. (Doc. 8, p. 23). As such, Plaintiff maintains that CPP continues to meet the criteria for Listing 112.02, albeit under a different set of criteria as compared to her CPD in 2002.

Agency regulations set forth some examples of difficulty that children may have in interacting and relating with others, such as: 1) does not reach out to be picked up and help by caregiver; 2) has no close friends, or all friends are older or younger than the child; 3) avoids or withdraws from people he or she knows, or is overly anxious or fearful of meeting new people; 4) has difficulty playing games or sports with rules; 5) has difficulty communicating with others (e.g. in using verbal and nonverbal skills to express herself, in carrying on a conversation, or in asking others for assistance); or 6) has difficulty speaking intelligibly or with adequate fluency. 20 CFR § 416.926a(i)(3).

Here, the record indicates that CPP has marked limitations in the 5th and 6th scenarios listed above, Specifically, CPP's language disorder makes it difficult for her to adequately communicate with others. Dr. Fritsch indicated that CPP's "poor language interferes with optimal socialization." (Tr. 408). Dr. Fritsch also noted that "she remain[s] quiet and only minimally responsive." (Tr. 407). The record further indicates when CPP does speak to others it is in a very quiet, almost inaudible voice. (Tr. 522-523). CPP has few friends, and only one (a neighbor) with whom she will play on a semi-regular basis. (Tr. 536). In addition, CPP's more recent report cards show that she does not participate in class discussions, has difficulty working independently, and has trouble practicing self-control. (Tr. 480). The undersigned agrees that all of these behaviors seriously interfere with her ability to socially "function at age appropriate levels independently, appropriately, effectively, and on a sustained basis" (the very definition of a "marked" limitation).

In light of the foregoing, the undersigned finds that CPP's impairments continue to meet the criteria for Listing 112.02 as she continues to have marked limitations in cognitive

and personal functioning.

### III. Conclusion and Recommendation

When the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan,* 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec. of Health and Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan,* 905 F.2d 918, 927 (6th Cir. 1990). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher,* 17 F.3d at 176; *see also Felisky,* 35 F.3d at 1041; *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir.1985). Such is the case here.

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found **NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **REVERSED**, and **REMANDED** for an immediate reinstatement of benefits. As no further matters remain pending for the Court's review, this case be **CLOSED**.

                                           */s Stephanie K. Bowman*
                                           Stephanie K. Bowman
                                           United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| ALVERTA UNDERWOOD,<br>on behalf of CPP,<br><br>       Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>       Defendant. | Case No. 1:11-cv-315<br><br>Spiegel, J.<br>Bowman, M.J. |

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).